VIGIL, Chief J., dissenting. {38} It might seem odd to ask whether a mandatory sentence following a criminal conviction constitutes punishment. However, I respectfully submit that is the very question which this case presents. Considered in its proper light, Yepa is being subjected to an unconstitutional ex post facto law, and contrary to the holding of the majority, I would affirm.[2] {39} The United States Constitution prohibits both the federal and state governments from enacting ex post facto laws. U.S. Const. art. 1, § 10, cl. 3 (prohibiting Congress from passing any ex post facto law); U.S. Const. art 1, § 10, cl. 1 (prohibiting any state from passing any ex post facto law). Such laws are also prohibited by the New Mexico Constitution in its own Bill of Rights. N.M. Const, art. II, § 19. “The Latin phrase ‘ex post facto’ implicates in its literal meaning any law passed ‘after the fact.’” Collins v. Youngblood, 497 U.S. 37,41 (1990); see Foy, 2013-NMCA-043, ¶ 10 (citation omitted). In my view, the federal and state constitutional prohibitions were violated in Yepa’s case. {40} Criminal actions and driver’s license revocations work together. Breath tests of motorists must be administered pursuant to the Implied Consent Act, NMSA 1978, Sections 66-8-105 to -112 (1978, as amended through 2007). When a breath test gives a blood alcohol concentration of .08 or higher, the arresting officer “shall” charge the driver with a violation of NMSA 1978, Section 66-8-102 (2004), and on behalf of the MVD serves notice thatthe driver’s license will be revoked for a period of six months, unless a hearing is requested. Section 66-8-110(C)(1); 66-8-111.1. Upon receipt of a statement signed under perjury from the police officer that a breath test was administered and the result was ablood alcohol concentration of .08 or higher, MVD revokes the driver’s license for six months. Section 66-8-111(C)(1) (2005). These statutory provisions were followed. Yepa was administered a blood alcohol test, and because the results were above .08, he was charged with DWI (aggravated) in violation of Section 66-8-102(D)(l), and MVD revoked Yepa’s license for six months on the basis that the result of his breath alcohol test was above the .08 per se limit. {41} When Yepa became eligible to have his driver’s license reinstated in March 2009, there was no ignition interlock requirement for reinstatement. Section66-5-3.1(13). However, when he did seek reinstatement in July, 2009, a law passed “after the fact” with an effective date of July 1,2009, had an ignition interlock requirement. This new law now required “a minimum of six months of driving with an ignition interlock license” for license reinstatement. Section 66-5-33.1(B)(4) (2009). The question before us is whether requiring Yepa to comply with the new ignition interlock requirement violates the constitutional prohibition against ex post facto laws. {42} “The Ex Post Facto Clause flatly prohibits retroactive application of penal legislation.” Landgraf v. USI Film Prods., 511 U.S. 244, 266 (1994) (quoted in State v. Ordunez, 2012-NMSC-024, ¶ 14, 283 P.3d 282). A statute is “penal” when it makes criminal a previously innocent act, increases the punishment, or changes the proof necessary to convict the defendant. Ordunez, 2012-NMSC-024, ¶ 14; State v. Romero, 2011-NMSC-013, ¶ 10, 150 N.M. 80, 257 P.3d 900. Moreover, the constitutional prohibition against ex post facto laws applies to all penal statutes, even those that are labeled civil. Foy, 2013-NMCA-043, ¶¶ 12-15. {43} In determining whether a statute is penal, the intent of the Legislature is controlling. Id. ¶ 15; Smith v. Doe, 538 U.S. 84, 92 (2003). Unlike the majority, I conclude that the intent of our Legislature has very clearly expressed its intention that a mandatory ignition interlock is penal. In 2005, our Legislature enacted significant amendments to the sentencing requirements for DWI convictions. One requirement is that upon a conviction for DWI, the sentencing judge must order installation of an ignition interlock device in the judgment and sentence: Section 66-8-102(N) (2005). See NMSA 1978, Section 66-5-503(B)(1) (2009) (stating that one of the requirements for obtaining an ignition interlock license is installation of an ignition interlock device on any vehicle driven). Upon a conviction pursuant to this section, an offender shall be required to obtain an ignition interlock license and have an ignition interlock device installed and operating on all motor vehicles driven by the offender, pursuant to rules adopted by the [traffic safety] bureau. Unless determined by the sentencing court to be indigent, the offender shall pay all costs associated with having an ignition interlock device installed on the appropriate motor vehicles. The offender shall operate only those vehicles equipped with ignition interlock devices for: (1) a period of one year, for a first offender; (2) a period of two years, for a second conviction pursuant to this section; (3) a period of three years, for a third conviction pursuant to this section; or (4) the remainder of the offender’s life, for a fourth or subsequent conviction pursuant to this section. {44} “The establishment of criminal penalties is a legislative function.” State v. Pendley, 1979-NMCA-036, ¶ 23, 92 N.M. 658, 593 P.2d 755. The Legislature could not be any clearer in expressing its intent that mandatory installation of an ignition interlock device constitutes punishment for committing the criminal offense of DWI. This becomes even more evident when one considers that this mandatory sentence was added to other existing penalties for DWI. As such, only the clearest proof should suffice to override the Legislature’s intent and transform what it has denominated a criminal penalty into a civil and nonpunitive regulation. See Hudson v. United States, 522 U.S. 93, 100 (1997) (stating that “only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty[.]” (internal quotation marks and citation omitted)). {45} When Yepa was arrested and charged with aggravated DWI in September 2008, the penalty included mandatory installation of an ignition interlock device for a period of one year, Section 66-8-102(N) (2008), and there was no such penalty for reinstatement of a driver’s license. After July 1, 2009, however, a new six-month penalty was imposed for reinstatement. See Collins, 497 U.S. at 43 (“Legislatures may not retroactively . . . increase the punishment for criminal acts.”). It belies reason to conclude that mandatory installation of an ignition interlock device following a criminal conviction is punishment but mandatory installation of an ignition interlock device for reinstatement of a driver’s license is not punishment. They are the same. {46} “If the intention of the legislature was to impose punishment, that ends the inquiry.” Smith, 538 U.S. at 92. The majority acknowledges that the threshold question is whether the Legislature intended to impose punishment. Majority Opinion ¶ 21. We have already concluded that the Legislature intended mandatory installation of an ignition interlock device to constitute punishment. In State v. Valdez, 2013-NMCA-016, ¶ 12, 293 P.3d 909, we noted: “The DWI statute is part of a broad legislative scheme, including the State’s separate Ignition Interlock Licensing Act, which applies to those whose “privilege or driver’s license has been revoked or denied.” Section 66-5-503(A).” We concluded: “The goal of the Legislature was to criminalize DWI and to penalize it with mandatory installation of ignition interlock devices[.]” Id. Thus, the majority fails to properly account for the fact that the Legislature imposed mandatory installation of an ignition interlock device as a penalty for DWI, and that this penalty was increased by an additional six months under the new law. {47} The majority then assumes that the MVD requirement is part of a regulatory scheme that is civil and nonpunitive. Majority Opinion ¶¶23-25. Finally, the majority then proceeds to analyze whether that statutory scheme is so punitive in either purpose or effect so as to negate its civil, nonpunitive purpose. Majority Opinion ¶¶ 26-34. In my opinion, this analysis does not apply because the legislative intent is clearly expressed that mandatory installation of an ignition interlock device is punishment for DWI. {48} For the foregoing reasons, I dissent from the holding that MVD was improperly enjoined from applying the interlock requirement to Yepa on the basis that the 2009 amendment is not penal under the constitutional prohibition against ex post fact laws. I would affirm. MICHAEL E. VIGIL, Chief Judge [2]In all other respects, I concur with the majority opinion.